645 A.2d 369

**Donald C. METZGER, Appellant,**

**v.**

**BENSALEM TOWNSHIP ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued May 12, 1994.

Decided June 24, 1994.

---

352

John A. VanLuvanee, for appellant.

Stephen H. Goldstein, for appellee.

Before CRAIG, President Judge, SMITH, Judge, and LORD, Senior Judge.

CRAIG, President Judge.

Donald C. Metzger appeals from an order of the Court of Common Pleas of Bucks County which affirmed the decision of the Bensalem Township Zoning Hearing Board denying Metzger's request for a certification of a nonconforming use because the nonconforming use of the property as an oil terminal was discontinued within the meaning of § 1100.4 of the Bensalem Township Zoning Ordinance. We reverse.

The facts of this case are as follows. Metzger is the owner of a tract of land (property) located in a C–Commercial Zoning District of Bucks County. Metzger acquired title to the property by deed from Douglas Hughes on August 30, 1991.

Historically, the Pennsylvania Railroad Company had acquired the property by deed dated June 16, 1916. In 1947, the Pennsylvania Railroad Company leased the property to Melvin Sargeant. Sargeant, owner of the Sargeant Oil Company, operated an oil terminal on the property from 1947 until 1968. During that time oil tanks and pipes were installed on the property. In 1968, Dickman–Sargeant Oil Company purchased Sargeant Oil Company. Dickman–Sargeant operated the oil terminal on the property from 1968 until 1981. By deed dated February 1, 1977, the trustees of the Penn Central Transportation Company and the Philadelphia and Trenton

Railroad Company conveyed the property to Dickman–Sargeant.

By deed dated May 22, 1981, Dickman–Sargeant conveyed the property to Leisure Time Trailer Center, Inc., which operated the property as a terminal for a kerosene business. Thereafter, Leisure Time utilized the property as an oil terminal for a home heating oil business. In 1985 or 1986, Leisure Time leased the property to Safety Kleen, which used the property as a waste oil terminal. Safety Kleen terminated its lease of the property in May, 1989.

On April 8, 1991, the Tax Claim Bureau of Bucks County sold the property because Leisure Time failed to pay real estate taxes. Douglas Hughes purchased the property and subsequently sold it to Metzger on August 30, 1991. Thereafter, on March 18, 1992, Metzger located a prospective tenant who wanted to utilize the property as an oil terminal.

Metzger applied to Bensalem Township for a commercial/industrial occupancy permit. The Director of Code Enforcement for the township denied Metzger's occupancy permit request because the zoning ordinance did not permit an oil terminal use in the C–Commercial Zoning District in which the property is located.

Metzger appealed the decision to the board which conducted a hearing addressing Metzger's request for certification of a nonconforming use or, in the alternative, a variance. The board denied Metzger's request.

Metzger appealed to the Court of Common Pleas of Bucks County, which affirmed the decision of the board. The trial court concluded that there was sufficient evidence to establish that the previous owners of the property had intentionally abandoned the property for more than one year. This appeal followed.

■ The issue in this case is whether the nonconforming use of the property was discontinued within the meaning of § 1100.4 of the zoning ordinance which provides, in pertinent part:

4. If a nonconforming use of a building or portion thereof or of land is discontinued for a period of one year, such nonconforming use shall not thereafter be re-established and the future use shall be in conformity with this Ordinance.

■■■■ As applied to nonconforming uses under zoning law, the word "discontinued" must be read as the equivalent of "abandoned". *West Mifflin v. Zoning Hearing Board,* 3 Pa.Commonwealth Ct. 485, 492, 284 A.2d 320, 324 (1971). A lawful nonconforming use does not lose its status unless the use is intentionally abandoned. The burden of proving abandonment of a non-conforming use is on the party asserting abandonment. *Smith v. Board of Zoning Appeals of the City of Scranton,* 74 Pa.Commonwealth Ct. 405, 459 A.2d 1350 (1983).

■■■ In this case, there is no dispute that from May 1989 until August 1991 the property was not used as an oil terminal. The discontinuance of a use in excess of the time limitation set forth in the zoning ordinance, in this case one year, creates a presumption of an intent to abandon. *Rayel v. Bridgeton Township Zoning Hearing Board,* 98 Pa.Commonwealth Ct. 455, 511 A.2d 933 (1986). However, the party asserting abandonment must also prove actual abandonment, which cannot be inferred from non-use alone. *Smith.* Abandonment may be determined by overt acts, a failure to act, or statements. *Tscheschlog v. Board of Supervisors of Tinicum Township,* 88 Pa.Commonwealth Ct. 256, 489 A.2d 958 (1985).

At the hearing, James Desmond, whose parents and grandparents were the principals of Leisure Time, testified. He stated that, in 1988, shortly before Safety Kleen terminated its lease, his grandfather died. His father died the following year. During that time, Leisure Time was unable to pay its creditors and owed money to banks and unsecured creditors. Desmond testified that there were liens on the property. Additionally, Leisure Time could not pay the taxes due on the property.

Desmond testified that, because of the financial condition of Leisure Time, the family concluded that it could not pay off its creditors and continue to operate. Therefore, Leisure Time parked the oil trucks owned by them on the property and locked the gates to the property.

■ Where discontinuance of a use occurs due to events beyond the owner's control, such as "financial inability of the owner to carry on due to general economic depression," there is no actual abandonment. *Smith,* 74 Pa.Commonwealth Ct. at 410, 459 A.2d at 1353. A finding of abandonment requires proof of an intent to relinquish the use voluntarily. *Korngold v. Zoning Board of Adjustment of the City of Philadelphia,* 147 Pa.Commonwealth Ct. 93, 606 A.2d 1276, *petition for allowance of appeal denied,* 533 Pa. 614, 618 A.2d 404 (1992). In this case, the facts support the conclusion that insolvency caused the involuntary discontinuance of the property as an oil terminal.

In *Rayel,* the Morrows operated a restaurant on their property as a nonconforming use. The Morrows borrowed money from a bank which was secured by a mortgage on the property. Thereafter, the Morrows defaulted on the mortgage to the bank and filed for bankruptcy. After filing the bankruptcy petition, the property was not utilized as a restaurant or for any other purpose. Several years later, the bank foreclosed on the property and sold it at a sheriff's sale.

The new owners of the property filed an application for a use permit to operate a restaurant on the premises. The permit was denied because the proposed use was not permitted under the prevailing zoning ordinance and the previous nonconforming use had ceased for more than six months. The board and the trial court concluded that the use of the property as a restaurant had been abandoned.

On appeal, this court recognized that the discontinuance of the use on the property for a period in excess of the time set forth in the zoning ordinance created the presumption of an intent to abandon. However, because the period of non-use related to the litigation resulting from the foreclosure pro-

ceedings, this court determined that no actual abandonment occurred. This court relied on the Supreme Court's decision in *Upper Providence Township Appeal,* 414 Pa. 46, 198 A.2d 522 (1964).

In that case, the owner of an amusement park, a nonconforming use, moved all of the mobile equipment from the park and placed a sign on the property stating that the park was closed. Additionally, the owner moved out of his residence on the property. The court determined that he did not intend to abandon the use. Because the bank instituted foreclosure proceedings, the owner had no choice but to leave the property. The court reasoned that an abandonment did not occur because the discontinuance of the use was due to events beyond the owner's control.

In this case, the discontinuance of the use was due to economic causes. Leisure Time used the property as a terminal at all times until the contract with Safety Kleen ended in 1989. Leisure Time did not attempt to use the property for any other purpose than as an oil terminal. Additionally, trucks and, most significantly, the equipment used for the oil terminal were never removed from the site and still remain on the property. Of course, removal of structures or equipment designed for a specific use constitutes the most definitive evidence of actual abandonment of that use. Here, although the straitened financial situation undoubtedly was a factor in the inaction, nevertheless there was no affirmative act pointing to a change of use.

The undisputed facts establish that the owners of the property did not voluntarily abandon the nonconforming use. Accordingly, the decision of the trial court is reversed.

### ORDER

NOW, June 24, 1994, the order of the Court of Common Pleas of Bucks County, at No. 92–07293–21–6, dated July 20, 1993, is reversed.