PAJ Ventures, LP,             :
           Appellant      :
                          :   No. 426 C.D. 2019
          v.              :
                          :   Argued: December 12, 2019
Zoning Hearing Board of Moore  :
Township and Township of Moore  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION BY
JUDGE McCULLOUGH                      FILED: January 22, 2020

PAJ Ventures, L.P. (Landowner) appeals from the March 13, 2019 order of the Court of Common Pleas of Northampton County (trial court) denying Landowner's appeal from the decision of the Zoning Hearing Board of Moore Township (Board). In its decision, the Board concluded that Landowner's prior lawful nonconforming use of its property, located at 942 Liberty Street, Bath, Pennsylvania (Property), as a picnic grove had been abandoned.


**Background**

In June 2017, Landowner filed a zoning permit application proposing a "picnic grove" on the Property as a continuation of a prior nonconforming use. (Board Finding of Fact (F.F.) No. 13.) The Property is located in the Rural Agricultural Zone (RA Zone). After conducting an investigation, the Moore Township (Township) Zoning Officer denied Landowner's application on the grounds that the nonconforming use of the Property as a picnic grove had been abandoned and that a picnic grove was not a permitted use in the RA Zone. *Id.* Landowner timely appealed to the Board

requesting (1) the Board find that the prior nonconforming use of the Property as a picnic grove had not been abandoned and, (2) in the alternative, a use variance to permit the picnic grove as a use in the RA Zone. On August 2, 2017, the Board conducted a hearing.

At the hearing, the Zoning Officer testified that he conducted a site review after Landowner submitted its application. (F.F. No. 13.) The Zoning Officer stated that he found the buildings on the Property had not been torn down but were in disrepair. He also reviewed the history of the Property and found that Joe Timmer (a/k/a "Jolly Joe") and Dorothy Timmer purchased the Property in 1970 and used it as a picnic grove, known as "Timmer's Grove," until approximately 2013. *Id.* The Zoning Officer testified that in 2013, he received complaints from neighbors regarding overgrown weeds on the Property. He conducted a site visit at that time and found that the weeds were so high that he was unable to navigate through the weeds to reach the front door of the grove building. Consequently, he issued a notice to the Timmers, dated September 5, 2013, notifying them that he would issue an enforcement notice if they did not cut the weeds. *Id.*

Mickey Thompson, Landowner's manager and in-house counsel for PAJ Venture Capital, an affiliate of Landowner, testified on behalf of Landowner. He stated that the Property had not been used since Landowner acquired it in December 2015. (F.F. No. 16.) He testified that it was his understanding that Joe Timmer suffered from dementia and was declared incapacitated in 2014. He observed that the buildings on the Property were in disrepair, but intact, and that the Timmer family members who handled the sale of the Property did not indicate an intent to abandon the picnic grove use. He stated that Landowner did not register the nonconforming use of the Property as a picnic grove within 60 days of the sale of the Property. (F.F. No. 16.)

Earl Fisher, who lives across the street from the Property, also appeared at the hearing. He testified that a wedding has not been held at the facilities on the

2

Property for over 20 years. He stated that all activity on the Property ceased in 2011 and that for the next three years the weeds on the Property were three feet high. He testified that Joe Timmer had previously mowed the lawn and made repairs to the Property, but that from 2011 going forward neither Joe Timmer nor anyone else maintained the Property. After 2011, he observed that the roads on the Property were not fixed, the grass was not cut, the buildings were falling down, and no one was present on the Property. In addition, Fisher stated that, during this time, the Property had never been used as a picnic grove, there were no picnic tables on the Property, no activities were conducted outside the buildings, and all activities at the Property had been held inside the buildings. (F.F. No. 19.) Lisa Gestl, who lives down the street from the Property, appeared at the hearing and similarly testified that the subject property has never been used as a picnic grove. (F.F. No. 20.) Finally, Kelly Fisher, who also lives across the street from the Property, appeared at the hearing. She stated that nothing had been done at the Property since it was purchased by Landowner in 2015 and that the buildings and roads on the Property were in serious disrepair. (F.F. No. 21.)

The Board concluded that the Township adopted the first Township Zoning Ordinance (Zoning Ordinance) in 1973, subsequent amendments to the Zoning Ordinance were adopted in 1980 and 2011, and use of the Property as a picnic grove was not permitted under any versions of the Zoning Ordinance. However, it determined that use of the Property as a picnic grove was considered a lawful nonconforming use because a picnic grove had existed on the Property prior to the enactment of the ordinances. (Board decision at 8.) The Board noted that under section 200-33F of the Zoning Ordinance,[1] a nonconforming use is considered abandoned if

---

[1] Section 200-33F of the Zoning Ordinance states as follows:

3

the nonconforming use is discontinued or removed for 12 consecutive months. Relying on *Latrobe Speedway, Inc. v. Zoning Hearing Board of Unity Township*, 720 A.2d 127 (Pa. 1998), the Board observed that failure to use a property for a designated time provided under a discontinuance provision in a zoning ordinance is evidence of an intention to abandon a nonconforming use. (Board decision at 9.)

Although the Township asserted that the picnic grove use was discontinued in 2013, when the Zoning Officer received complaints regarding overgrown weeds and encountered weeds blocking the entrance on a site visit, the Board concluded that the use of the Property as a picnic grove had, in fact, been abandoned earlier, in 2011. The Board credited Earl Fisher's testimony that use of the Property stopped in 2011 and that for the next three years the weeds on the Property were three feet high. Thus, the Board concluded that use of the Property as a picnic grove was discontinued in excess of the 12-month discontinuance period under section 200-33F of the Zoning Ordinance, which gave rise to a rebuttable presumption of an intent to abandon the use. *Id.* at 10.

The Board observed that Mickey Thompson testified that Joe Timmer suffered from dementia and was declared incapacitated in 2014. The Board noted that based on this testimony, Landowner asserted that Joe Timmer only stopped operating the picnic grove because he was no longer able to care for the Property and operate the business and not because he intended to abandon the picnic grove use. However, the

---

Abandonment. If a nonconforming use of a building, structure or land is discontinued, razed, removed or abandoned for 12 consecutive months, subsequent use of such building, structure or land shall conform to the regulations of the district in which it is located, unless other nonconforming use is approved in accordance with §200-33G and that such approved use be initiated within 30 days after the end of the twelve-month period.

Zoning Ordinance, §200-33F.

Board discredited this testimony because Landowner "did not present any supporting medical evidence or testimony from a physician, close friend or family member regarding Joe Timmer's health or mental condition." *Id.* The Board also concluded that "even if Joe Timmer suffered from dementia, [Mickey] Thompson did not pinpoint when the onset of dementia occurred and was merely speculating that Joe Timmer's mental condition [was] the reason why he stopped operating the picnic grove." *Id.* The Board recognized that while the formal rules of evidence do not apply in zoning cases, "it is within the sole province of the zoning hearing board to determine the credibility of witnesses and the weight to be afforded their testimony." *Id.* The Board found that Mickey "Thompson's testimony [did] not constitute competent evidence which rebut[ted] the presumption of intent to abandon the picnic grove use." *Id.*

The Board held that in addition to demonstrating an intent to abandon, the party asserting abandonment must also prove the "actual abandonment" of the nonconforming use for the prescribed period. *Id.* at 11. The Board concluded that although the mere non-use of the subject Property was not enough to demonstrate "actual abandonment," the record evidence showed overt acts and failure to act which demonstrated actual abandonment of the picnic grove use. In particular, the Board noted the record evidence showed that all activity on the Property stopped in 2011, and that after that point in time the Timmers took no steps to maintain the structures, the roads, or the site itself. *Id.* at 11-12. The Board also observed that the Zoning Officer testified that in 2013 the weeds were so high he could not reach the front door of the building on the Property and that the weeds were only cut after the Zoning Officer threatened an enforcement action. It also noted the neighbors' testimony that the structures and road on the Property had significantly deteriorated. Based on this evidence, the Board determined the Township had demonstrated actual abandonment and, therefore, that the burden shifted to Landowner to show acts that would disprove actual abandonment. *Id.* at 12.

5

The Board concluded Landowner did not rebut this presumption. Specifically, the Board found that there were no efforts to improve the Property between 2011 and December 2015, when Landowner acquired it, and that, thereafter, the first activity on the Property occurred in 2016 when Landowner hired a consultant to locate the septic system and conduct a survey of the Property. However, the Board determined the activities undertaken by Landowner "occurred five years after any use of the subject property had ceased, and four years after the picnic grove had, pursuant to the discontinuance provision in the Zoning Ordinance, been deemed abandoned." *Id.*

The Board also observed that "[t]he general rule is that actual abandonment does not occur when the use is discontinued for reasons beyond the property owner's control." *Id.* Yet, as noted previously, the Board concluded that Landowner "did not present sufficient competent evidence to prove its claim that Joe Timmer discontinued the picnic grove use only because he was suffering from dementia and could no longer operate the business or maintain the site" and that "[i]n the absence of competent evidence, the Board [would] not speculate as to the reasons why the Timmers discontinued the picnic grove in 2011 and then allowed the buildings and the site itself to deteriorate to a significant degree." *Id.* at 13. Therefore, the Board denied Landowner's request that it find that the prior nonconforming use of the Property as a picnic grove had not been abandoned. *Id.* Additionally, because Landowner did not demonstrate unnecessary hardship, the Board denied Landowner's request for a use variance. *Id.*

Landowner timely appealed the Board's decision to the trial court. After reviewing the record, the trial court concluded that the Board considered the record in a fair and impartial manner and did not commit an abuse of discretion or error of law in denying Landowner's request to find that the nonconforming use of the Property had not been abandoned. The trial court held that the Board's decision was "supported by

6

substantial evidence that the Timmers intended to and did actually abandon the nonconforming use by voluntarily failing to maintain the [P]roperty for use from 2011, resulting in an abandonment of the nonconforming use well in excess of 12 months prior to [Landowner's] application." (Trial court op. at 7.) The trial court also determined that Landowner offered no evidence that would support the grant of a use variance. *Id.* Accordingly, the trial court affirmed the decision of the Board.

## Discussion

Landowner now appeals to this Court,[2] arguing that (1) the Township failed to meet its burden of demonstrating abandonment of the nonconforming use on the Property because it did not prove that the owner of the Property intended to abandon its use as a picnic grove; and (2) the Township could not terminate the lawfully existing nonconforming use on the Property through zoning regulations requiring continuous operation of the nonconforming use and/or registration of the nonconforming use upon transfer of title to the Property.

We first address whether the Township met its burden of demonstrating abandonment of the nonconforming use on the Property. Landowner acknowledges that the Timmers did not operate the Property as a picnic grove for a period in excess of 12 months, which gave rise to a rebuttable presumption under section 200-33F of the Zoning Ordinance that the Property's nonconforming use had been abandoned.

---

[2] Where, as here, the trial court takes no additional evidence, our scope of review is limited to determining whether the Board committed an abuse of discretion or an error of law. *Hamilton Hills Group, LLC v. Hamilton Township Zoning Hearing Board*, 4 A.3d 788, 792 n.6 (Pa. Cmwlth. 2010). An abuse of discretion will only be found where the zoning board's findings are not supported by substantial evidence. *Larsen v. Zoning Board of Adjustment of City of Pittsburgh*, 672 A.2d 286, 289 (Pa. 1996). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment*, 462 A.2d 637, 640 (Pa. 1983).

7

However, Landowner argues that it introduced evidence rebutting this presumption. Specifically, Landowner contends that the Timmers were dealing with advanced age and poor health and that Joe Timmer told the Zoning Officer that poor health was his reason for failing to maintain the Property. Landowner asserts that Joe Timmer suffered from dementia, was declared incapacitated in 2014, and passed away in 2015. Landowner maintains that when it bought the Property in 2015, it did nothing to suggest abandonment of use. It notes that the buildings on the Property were never removed or modified and that shelving in the buildings still contained canned goods that were used by the Timmers in relation to the nonconforming use. Accordingly, Landowner contends that the Board erred in finding the use abandoned where there was no evidence of actual abandonment.

Conversely, the Board maintains that a municipality may enact a zoning ordinance that provides for abandonment of a nonconforming use upon a period of non-use or discontinuance. The Board alleges that where a zoning ordinance provides for abandonment of a nonconforming use upon a period of non-use, the non-use of the Property in excess of the prescribed period gives rise to a rebuttable presumption of an intent to abandon the nonconforming use. The Board notes that Earl Fisher's testimony regarding the three-foot high weeds on the Property established that the Property was not used as a picnic grove for more than 12 months and that his testimony was corroborated by the Zoning Officer. Thus, the Board argues that, pursuant to section 200-33F of the Zoning Ordinance, the Township demonstrated an intent to abandon. The Board also contends that the testimony regarding the three-foot high weeds and poor condition of the roads and buildings on the Property provided sufficient evidence to demonstrate actual abandonment of the nonconforming use.

The Board argues that Landowner failed to rebut the presumption of abandonment that arose from the Property's non-use for over 12 months. Although Mickey Thompson testified that he believed Joe Timmer suffered from dementia and

8

was declared incapacitated, the Board found that this evidence was not supported by testimony of physicians, close friends, or family members and that Mickey Thompson did not provide evidence of when Joe Timmer was first afflicted by dementia. Accordingly, the Board maintains that, as the arbiter of credibility, it acted within its discretion in not crediting Landowner's testimony that the non-use of the Property stemmed from Joe Timmer's health issues rather than an intent to abandon. The Board further contends that no efforts were undertaken to improve the Property from 2011 until 2015.

> Section 200-33F of the Zoning Ordinance provides the following:

> Abandonment. If a nonconforming use of a building, structure or land is discontinued, razed, removed or abandoned for 12 consecutive months, subsequent use of such building, structure or land shall conform to the regulations of the district in which it is located, unless other nonconforming use is approved in accordance with §200-33G and that such approved use be initiated within 30 days after the end of the twelve-month period.

Zoning Ordinance, §200-33F.

"A lawful nonconforming use is a use predating the enactment of a prohibitory zoning restriction." *DoMiJo, LLC v. McLain*, 41 A.3d 967, 972 (Pa. Cmwlth. 2012). However, "[t]he right to maintain a pre-existing nonconformity is available only for uses that were lawful when they came into existence and which existed when the ordinance took effect." *Hager v. West Rockhill Township Zoning Hearing Board*, 795 A.2d 1104, 1110 (Pa. Cmwlth. 2002). When a lawful nonconforming use exists, "the right to continue such use is afforded the constitutional protections of due process." *DoMiJo*, 41 A.3d at 972. Thus, "[a] municipality is without power to compel a change in the nature of a use where property was not restricted when purchased and is being used for a lawful use." *Paulson v. Zoning Hearing Board of Wallace Township*, 712 A.2d 785, 788, (Pa. Cmwlth. 1998). "[A]

9

property owner's right to continue operating a legal nonconforming use on its property is an interest that runs with the land, so long as it is not abandoned." *DoMiJo*, 41 A.3d at 972.

The burden of proving that a nonconforming use has been abandoned is on the party so asserting. *Smith v. Board of Zoning Appeals of City of Scranton*, 459 A.2d 1350, 1352 (Pa. Cmwlth. 1983). Therefore, here, the Township had the burden of demonstrating abandonment. In order to demonstrate abandonment, a party must show both (1) an intent to abandon, and (2) actual abandonment. *Latrobe Speedway*, 720 A.2d at 132; *Smith*, 459 A.2d at 1352.

Where, as here, an abandonment provision is provided in the ordinance, such a provision "creates a presumption of the intent to abandon the use by the expiration of the designated time." *Latrobe Speedway*, 720 A.2d at 132. Thus, "[a]bsent any evidence to the contrary, the lapse of the designated time will be sufficient to establish an intent to abandon the use." *Id.* Failure to use a property for a designated time provided under an abandonment provision creates a presumption of an intent to abandon, with respect to *that* element, which shifts the burden to the party contesting the claim of abandonment. *Latrobe Speedway*, 720 A.2d at 132; *Finn v. Zoning Hearing Board of Beaver Borough*, 869 A.2d 1124, 1127 (Pa. Cmwlth. 2005). Yet, if evidence of a contrary intent is introduced, the presumption is rebutted and the burden shifts back to the party claiming abandonment. *Latrobe Speedway*, 720 A.2d at 132.

However, it bears emphasizing that failure to use a property for the designated time in the ordinance only creates a rebuttable presumption with respect to the first of the two abandonment elements; the party asserting abandonment must still satisfy the second element before the burden shifts to the landowner. *See Finn*, 869 A.2d at 1127; *Zitelli v. Zoning Hearing Board of Borough of Munhall*, 850 A.2d 769, 772 (Pa. Cmwlth. 2004). "What is critical is that the intention to abandon is only one

10

element of the burden of proof on the party asserting abandonment. The second element of the burden of proof is actual abandonment of the use for the prescribed period. This is separate from the element of intent." *Latrobe Speedway*, 720 A.2d at 132. Actual abandonment of a nonconforming use "cannot be 'inferred from or established by a period of nonuse alone. It must be shown by the owner['s] . . . overt acts or failure to act.'" *Zitelli*, 850 A.2d at 772 (quoting *Estate of Barbagallo v. Zoning Hearing Board of Ingram Borough*, 574 A.2d 1171, 1173 (Pa. Cmwlth. 1990)). However, courts typically will not find actual abandonment when a use is temporarily discontinued for reasons beyond the landowner's control, such as a financial inability of the owner to carry on due to general economic depression. *See Zitelli*, 850 A.2d at 773; *Metzger v. Bensalem Township Zoning Hearing Board*, 645 A.2d 369, 371 (Pa. Cmwlth. 1994); *Smith*, 459 A.2d at 1353.

In *Zitelli*, the landowner asserted that two rowhouses that had been used as two-family residences constituted lawful nonconforming uses. 850 A.2d at 770. The evidence demonstrated that the rowhouses were vacated in 1997 and purchased by the landowner in 2001. During the period between when the rowhouses were vacated and purchased, the properties deteriorated and were boarded up by the borough. Although the landowner made minimal repairs to one of the rowhouses shortly after purchasing it, the landowner made no improvements to the second rowhouse. On appeal, we first determined that because the properties were vacated in 1997 and purchased in 2001, "any non-conforming use of the properties was discontinued for *more* than [12] months—the time included in the [b]orough's current zoning ordinance—and a presumption of intent to abandon such use was established." *Id.* at 772 (emphasis in original). We further held that "evidence showing that the rowhouses had been boarded up and were not inhabited as two-family dwellings indicated actual abandonment of any alleged non-conforming use." *Id.* at 772. Once the burden shifted to the landowner, we concluded he presented no evidence to either rebut the presumption of

11

intent to abandon or that he undertook acts that would disprove actual abandonment of the alleged nonconforming use. Specifically, we observed that the repairs made to one of the rowhouses took place three and one-half years after the rowhouses were vacated and boarded up and, pursuant to the discontinuance provision in the zoning ordinance, presumed abandoned. *Id.*

Here, we conclude the Board did not err in deciding that the Property's nonconforming use was abandoned. First, the Township presented sufficient evidence to create a rebuttable presumption of an intent to abandon the prior nonconforming use on the Property. Earl Fisher testified that in 2011 all activity on the Property stopped and that for the next three years the weeds on the Property were three feet high. (Reproduced Record (R.R.) at 82a-84a.) The Zoning Officer also testified that in 2013 he received complaints about overgrown weeds on the Property and that when he visited the Property the weeds were so high he could not reach the front door of the building. (R.R. at 20a-22a, 35a.) Under section 200-33F of the Zoning Ordinance, Zoning Ordinance, §200-33F, a nonconforming use is considered abandoned if the use is discontinued in excess of 12 months. It is undisputed that, beginning in 2011, the Property was not used as a picnic grove for more than 12 months; pursuant to section 200-33F of the Zoning Ordinance, the Property's non-use as a picnic grove for more than 12 months gave rise to a rebuttable presumption of an intent to abandon. *Id.*

Second, the Township presented evidence of either "overt acts" or "failure to act" and, thus, established actual abandonment. *Zitelli*, 850 A.2d at 772. Both Earl Fisher and the Zoning Officer testified that from 2011 forward the Property was overgrown with three-foot high weeds. (R.R. at 20a-22a, 35a, 82a-84a.) Earl Fisher testified that the Property "went to hell" because Joe Timmer did not "fix the road and the buildings [were] falling down" and "[n]obody was anywhere around the place." (R.R. at 84a.) Kelly Fisher stated that the building and roads that were on the Property were in serious disrepair. (R.R. at 86a-87a.) In particular, she noted that the foundation

12

on one of the buildings was so deteriorated that it looked like the corner of the building would fall, that the roads were "atrocious" and non-drivable due to "big holes," and that a fallen tree had created a large hole in the fence on the Property. *Id.* Like *Zitelli*, where the two properties fell into disrepair and were boarded up and we held that such evidence constituted actual abandonment, here, the evidence presented by the Township regarding the deterioration of the Property satisfied the Township's burden with respect to demonstrating actual abandonment.

Since the Township met its initial burden, the burden shifted to Landowner to rebut the presumption of an intent to abandon and/or to disprove actual abandonment. *See Zitelli*, 850 A.2d at 772. We hold that the Board did not err in concluding that Landowner failed to meet its burden. First, while Landowner argues that it made some repairs to the Property in 2016, this occurred nearly four years after the Property was deemed abandoned pursuant to section 200-33F of the Zoning Ordinance. Landowner also contends that it did not remove the buildings on the Property and that the buildings on the Property still contained shelving with canned goods; however, this does not establish that Landowner "undertook acts that would disprove actual abandonment" of the picnic grove use. *Zitelli*, 850 A.2d at 772.

Landowner also argues that the Timmers' age and poor health prevented them from maintaining the Property. Specifically, Landowner maintains that Joe Timmer told the Zoning Officer his poor health prevented him from maintaining the Property, Joe Timmer was declared incapacitated in 2014 due to dementia, and Joe Timmer died in 2015. The Board considered this evidence but afforded it little to no weight because Landowner "did not present any supporting medical evidence or testimony from a physician, close friend or family member regarding Joe Timmer's health or mental condition." (Board decision at 10.) The Board also found that even if Joe Timmer suffered from dementia, Mickey Thompson, who testified regarding Joe Timmer's health, "did not pinpoint when the onset of dementia occurred and was

13

merely speculating that Joe Timmer's mental condition [was] the reason why he stopped operating the picnic grove." *Id.* Thus, the Board concluded that Mickey Thompson's testimony did not constitute competent evidence rebutting the presumption of intent to abandon the picnic grove use.

The Board is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Tri-County Landfill, Inc. v. Pine Township Zoning Hearing Board*, 83 A.3d 488, 518 (Pa. Cmwlth. 2014); *Szewczyk v. Zoning Board of Adjustment of City of Pittsburgh*, 654 A.2d 218, 222 (Pa. Cmwlth. 1995). As the arbiter of credibility, the Board acted within its discretion by finding that Mickey Thompson's uncorroborated hearsay testimony did not constitute sufficient evidence to rebut the presumption of an intent to abandon the picnic grove and on appeal we are prohibited from reweighing evidence that was discredited by the Board. Therefore, because the Township met its burden in demonstrating abandonment we are constrained to affirm the trial court's decision on that issue.[3]

We next address whether the Township could terminate the lawfully existing nonconforming use on the Property through zoning regulations requiring continuous operation of the nonconforming use and/or registration of the nonconforming use upon transfer of title to the Property. Landowner observes that under section 200-33E of the Zoning Ordinance, a new owner of a property may continue a lawful nonconforming use as long as it reregisters the nonconforming use within 60 days of final settlement. Landowner acknowledges that it did not reregister the nonconforming use of the Property after it purchased the Property, but argues that

---

[3] We also note that the Property was co-owned by Joe Timmer's wife, Dorothy Timmer, until it was purchased by Landowner in 2015. *See* F.F. No. 13.; R.R. at 42a, 118a. Landowner has not alleged that Dorothy Timmer was incapacitated or undertook any actions that would disprove actual abandonment of the picnic grove use on the Property.

14

under Pennsylvania law a zoning hearing board is prohibited from finding abandonment based solely on a purchaser's failure to reregister a nonconforming use.

In contrast, the Board argues that Landowner's argument regarding section 200-33E is moot because the Board determined that Landowner's failure to reregister the picnic grove as a nonconforming use did not deprive it of the right to continue that use. The Board notes that it specifically rejected the Township's argument that the picnic grove use had been abandoned as a result of Landowner's failure to comply with section 200-33E. Because the Township did not appeal the Board's decision, the Board contends that Landowner's alleged failure to comply with section 200-33E became a moot issue.

Section 200-33E of the Zoning Ordinance states as follows:

> Ownership. Whenever a lot is sold to a new owner, a previously lawful nonconforming use may be continued by the new owner. However, the new owner shall reregister the nonconforming use with the Zoning Officer within 60 days after final settlement.

Zoning Ordinance, §200-33E.

Regarding section 200-33E, the Board found that "'[t]he mere absence of a certificate does not deprive the landowner of his right to continue a lawful nonconforming use.'" (Board decision at 9 n.2) (quoting *DoMiJo*, 41 A.3d at 973). Accordingly, the Board held that Landowner's "failure to register the nonconforming use in accordance with section 200-33E of the Zoning Ordinance [did] not deprive [Landowner] of the right to continue the use of the subject property as a picnic grove." (Board decision at 9 n.2.) Because the Township did not appeal the Board's decision, the issue regarding Landowner's compliance with section 200-33E is, indeed, moot.

**Conclusion**

Because the Township met its burden of proving the abandonment of the Property's prior nonconforming use as a picnic grove, the trial court's order is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

16

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PAJ Ventures, LP,                  :
               Appellant          :
                                 :
                                 :   No. 426 C.D. 2019
               v.                 :
                                 :
Zoning Hearing Board of Moore      :
Township and Township of Moore     :

## *<u>ORDER</u>*

       AND NOW, this 22nd day of January, 2020, the March 13, 2019 order of the Court of Common Pleas of Northampton County is affirmed.

 

                                _____

                                PATRICIA A. McCULLOUGH, Judge